ADA M. LENNON, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF DEWITT L. LENNON, DECEASED; ADA M. LENNON, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF MARION DEWITT LENNON, DECEASED; OLIVER LENNON AND JOHN GRAHAM, APPELLANTS, v. ATLANTIC CITY RAILROAD COMPANY, RESPONDENT.

Submitted May 29, 1930—Decided October 20, 1930.

For the appellants, *Bleakley, Stockwell & Burling.*

For the respondent, *Thompson & Hanstein.*

The opinion of the court was delivered by

LLOYD, J.  In an action to recover damages resulting from the death of two persons and injuries to two others arising out of a collision between a train of the Atlantic City Railroad Company and an automobile in which they were riding, there was a judgment of nonsuit on the plaintiffs' opening, and from this judgment the plaintiffs appeal.

The pertinent parts of the opening are as follows: The occupants of the car were proceeding from Atlantic City to Whitesboro, in the southern section of the state, and missing their road, found themselves in Egg Harbor and asked for directions.  They were told to take the first road to the left and to continue on across the railroad tracks to Mays

Landing. Passing the road indicated they came to Liverpool avenue, and mistakenly took this avenue to cross the railroad. Liverpool avenue runs at right angles to the railroad, but terminates there. Instead of stopping at the end of the road, however, the parties proceeded on across the tracks of the railroad when they were struck by a train of the defendant.

On its right of way defendant maintains four tracks, the easterly two being sidings for loading and unloading freight. The surface of the roadbed of these two tracks is level with Liverpool avenue and made of the same dirt material. The two main tracks were of stone ballast with the rails above the surface. To reach the point of collision the car passed over the freight tracks. The opening was further that no warning of any kind was given of the approach of trains and that no lights, fences or guards were maintained to warn those using Liverpool avenue of the presence of the railroad tracks or that the street terminated there.

It is contended by the appellants that this situation developed a liability on two grounds: First, that the railroad company had created a nuisance so near to the highway as to be a source of danger to those normally using the highway. We think this is wholly without merit and calls for no discussion. Second, that the railroad company under the above state of facts had given to the approach to its tracks and freight station the appearance of a public highway from which an invitation to its use by the traveling public could be implied. We think this contention is also unsound.

The roadbed and the right of way were the exclusive property of the railroad company. The tracks and the approach seemed to be of the usual construction adopted by railroad companies in the cities and towns of the state. The siding tracks were used to connect with the company's freight station and for the accommodation of industries. To utilize them for these purposes it was natural, if not essential, that these tracks be on a level with the soil, and it so happens that the soil of the right of way at these tracks is of the same material as that of Liverpool avenue; neither of which seems

to have been paved. In so far as appears from the opening both of these conditions may have existed in the natural state of the ground.

Undoubtedly the public having business with the company could imply from this situation an invitation to use so much of the right of way as was required to reach the freight cars or the freight station, but, unless the appellants' contention be sound, the invitation extended no further, and a duty of care to others would not be required of the company. *Phillips* v. *Library Co.,* 55 *N. J. L.* 307.

In the case of *Furey* v. *New York Central and Hudson River Railroad Co.,* 67 *N. J. L.* 270, 275, this court said:

"Liability is imposed upon the owner or occupier of land only when he has done something which justifies one who enters upon the land and makes use of it, or something upon it, in believing that he intended such use to be made; and he who makes such use can claim the relation only when he is justified by the acts or conduct of the owner or occupier in believing that such use was intended. Implied invitation, therefore, is part of the law of negligence by which an obligation to use reasonable care arises from the conduct of the parties; its essence is that the defendant knew, or ought to have known, that something that he was doing or permitting to be done, might give rise in an ordinarily discerning mind to a natural belief that he intended that to be done which his conduct had led the plaintiff to believe that he intended. It is not enough that the user believed that the use was intended; he must bring his belief home to the owner by pointing to some act or conduct of his that afforded a reasonable basis for such a belief."

Tested by this rule we find nothing in the facts as stated in the plaintiffs' opening to the jury which would justify the traveling public in believing that the railroad company had established a crossing for its use.

In *Pennington* v. *Director General,* 97 *N. J. L.* 40, it was said by the Chief Justice, speaking for the Supreme Court, in a case quite similar on its facts, that the "plaintiff was a trespasser on the right of way; whether intentionally or

not does not matter; and hence the defendant owed him no duty of care, in the legal sense of the word."

Much reliance is rested by the appellants on the case of *Black* v. *Central Railroad,* 85 *N. J. L.* 197, the facts of which case, however, were widely different from those here presented. The portion of the railroad's property in that case is described in the opinion and in the reporter's introduction as having very much the appearance of a street; it was a continuation of a city street; it was paved like a street; it was lighted and sprinkled like a street; it was patrolled by the city police like other streets and where it was crossed by railroad tracks flagmen were stationed as is customary at public street crossings. All of these things, with the exception of police patrol, were the acts of the railroad company. The continuation of this apparent roadway through the railroad property had existed for many years and had afforded a way to the docks and ferries of the company. There was evidence of constant use by such of the public as had occasion to use it and no proof that anyone was prevented from using it. From these conditions it was held that it could be inferred that the railroad company had by its acts given to the public reasonable ground to believe that the roadway in question was intended for the general use of the traveling public, and that a failure to give warning of the approach of one of its trains at such a crossing constituted negligence from which liability would arise.

It requires no keenness of perception to recognize the wide variance in the essential facts here outlined and those present in the case before us. To attach responsibility to the respondent on the present state of facts would be to exact of property owners the assumption of a burden which in this state at least has never been held to exist. In the approaches from highways to business properties or private dwellings where opposite to the end of a public street and where the level of such approach corresponded with the public highway, and was composed of the same material, the owner would be under a duty of guarding the users of the highway against the dangers that might exist upon the owner's land. To state such a proposition is but to answer it in the negative.

In the brief of the respondent it is suggested that even though a possible invitation to enter upon the freight tracks of the right of way existed, yet no such invitation to continue on over the ballasted main tracks, which were raised above the level of the ties, could be implied, and that under the authority cited the rights of the parties could in no event extend beyond the scope of the invitation. We express no opinion on this contention, preferring to put our conclusion on the broader ground that except for the uses intended there was no invitation extended to those using Liverpool avenue to enter upon the company's right of way.

The judgment of nonsuit is affirmed.

*For affirmance*—The Chief Justice, Trenchard, Campbell, Lloyd, Case, Bodine, Van Buskirk, McGlennon, Kays, Hetfield, Dear, Wells, JJ. 12.

*For reversal*—The Chancellor, Daly, Donges, JJ. 3.